1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  BOBBY THOMAS, JR., | ) Case No.: 1:20-cv-01409-JLT (HC) |
| 12        Plaintiff, | ) ORDER DIRECTING CLERK OF COURT TO |
| 13     v. | ) ASSIGN DISTRICT JUDGE |
| 14  SUTTON, Warden, | ) FINDINGS AND RECOMMENDATION TO |
| 15        Defendant. | ) DISMISS HABEAS PETITION |
| 16 | ) [THIRTY-DAY OBJECTION DEADLINE] |

17          On July 6, 2020, Petitioner filed the instant petition for writ of habeas corpus in the United

18  States District Court for the Central District of California. (Doc. 1.) The Central District transferred

19  the petition to this Court on October 1, 2020. (Doc. 5.) Petitioner challenges a parole suitability

20  hearing held in October 2018. Petitioner also alleges that CDCR is not adequately protecting him from

21  the risk of contracting COVID-19.

22                                **DISCUSSION**

23  A.     Preliminary Review of Petition

24          Rule 4 of the Rules Governing Section 2254 Cases requires the Court to make a preliminary

25  review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it

26  plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in

27  the district court. . ." Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). The Advisory

28  Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus,

1    either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an

2    answer to the petition has been filed.

3    B.      Failure to State a Cognizable Ground for Relief

4            Petitioner's claims concern the decision of the California Board of Parole Hearings. Petitioner

5    challenges the constitutionality of the process used by the board to determine his suitability for parole,

6    claims that the board violated federal and state due process rights because of an "established policy

7    rejecting parole solely on not articulating effectively," and asserts that the five year denial violates the

8    U.S. Constitution regardless of whether its characterized as a punishment or otherwise. (Doc. 1 at 5-6.)

9            These claims are foreclosed by the Supreme Court's decision in Swarthout v. Cooke, 562 U.S.

10   216 (2011).  In Swarthout, the Supreme Court held that the federal habeas court's inquiry into whether

11   a prisoner who has been denied parole received due process is limited to determining whether the

12   prisoner "was allowed an opportunity to be heard and was provided a statement of the reasons why

13   parole was denied." Id., (citing Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442

14   U.S. 1, 16 (1979)).  Petitioner does not contend he was denied these procedural due process

15   guarantees, and in any case, as the order by the Superior Court reflects, he was present at his parole

16   hearing, was given an opportunity to be heard, and was provided a statement of reasons for the parole

17   board's decision.  (Doc. 1 at 9-18.)  According to the Supreme Court, this is "the beginning and the

18   end of the federal habeas courts' inquiry into whether [the prisoner] received due process."

19   Swarthout, 131 S.Ct. at 862.  "The Constitution does not require more."  Greenholtz, 442 U.S. at 16.

20   Therefore, Petitioner's challenges to the board's denial of parole fail to present cognizable federal

21   claims for relief and the petition should be dismissed.

22           Additionally, Petitioner alleges that he is medically high risk because he is elderly and is not

23   being adequately protected from the coronavirus. (Doc. 1 at 6.) Petitioner argues that the CDCR is not

24   adequately protecting Petitioner, a 64-year-old man, from the risk of contracting COVID-19, due to

25   "inadequate isolation of symptomatic inmates, inadequate quarantine of exposed inmates, [and]

26   inadequate exclusion of symptomatic or exposed staff members" at Wasco State Prison where he is

27   currently housed. (Doc. 1 at 6.)

28           On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic

Security Act (the "CARES Act"), P.L. 116-136, 134 Stat 281. The CARES Act provides, in part, home confinement authority to the Bureau of Prisons during the period beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the COVID-19 pandemic, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau. The CARES Act, § 12003(b)(2). In a memorandum dated March 26, 2020, U.S. Attorney General William Barr directed the federal Bureau of Prisons ("BOP") to identify suitable inmates for home confinement with COVID-19 risk factors to minimize the risk of inmates' health due to the ongoing COVID-19 pandemic. Off. of the Att'y Gen., Mem. for Dir. of Bureau Prisons, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (March 26, 2020), https://www.justice.gov/coronavirus; *see also* Off. of the Att'y Gen. Mem., Mem. for Dir. of Bureau Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus. However, this form of relief through the CARES Act is available to *federal* prisoners incarcerated at Bureau of Prisons facilities, of which petitioner is not.

Moreover, federal habeas corpus relief is available only for challenges to the duration or legality of a prisoner's confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Although petitioner's request appears to argue the current prison conditions expose him to a higher risk of harm due to his various medical conditions and COVID-19, petitioner's request relates to the conditions of petitioner's confinement and accordingly is more appropriately brought pursuant to 42 U.S.C. § 1983. Bowman v. California, No. EDCV 19-00184 RGK (RAO), 2019 WL 4740538, at *1-2 (C.D. Cal. June 26, 2019) (Petitioner's request for release from custody based on jail conditions through a habeas petition was dismissed for failure to state a cognizable federal claim. Claims relating to conditions of confinement for state prisoners are more appropriately brought under 42 U.S.C. § 1983 even though petitioner also requested release from custody as a form of relief).[1]

///

---

[1] The pendency of civil rights actions (now) involving COVID-19, such as the Coleman v. Newsome, 2:90-cv-0520 KJM DB (E.D. Cal.)/Plata v. Newsome, 01-cv-01351 JST (N.D. Cal.) class action, is the appropriate forum to address conditions of confinement.

3

## ORDER

The Court DIRECTS the Clerk of Court to assign a district judge to the case.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the habeas corpus petition be SUMMARILY DISMISSED without prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __October 18, 2020__                    _____**/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

4